UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA LYNN BARNEY,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>Defendant. | No. 1:22-cv-00414-GSA<br><br>**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 16, 17)** |

### I.  Introduction

Plaintiff Victoria Lynn Barney ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs.[1] Docs. 16, 17. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision that Plaintiff was not disabled.

### II.  Factual and Procedural Background[2]

On June 21, 2017 Plaintiff applied for supplemental security income. The Commissioner denied the application initially on July 27, 2017 and on reconsideration on November 30, 2017. A hearing was held before an Administrative Law Judge (the "ALJ") on August 31, 2018. On December 13, 2018 the ALJ issued an unfavorable decision. AR 17–29. The Appeals Council denied review on December 4, 2019. AR 1–6. Contemporaneously, Plaintiff filed a subsequent application for supplemental security income on February 10, 2020 which the agency granted. AR 403.

Plaintiff filed a complaint in this Court appealing the earlier dated, unsuccessful application,

---

[1] The parties consented to jurisdiction of a United States Magistrate Judge. *See* Docs 7, 10.

[2] The undersigned has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

1

and this Court entered judgment in Plaintiff's favor remanding the matter to the agency for further proceedings (20-cv-00254). AR 390-400. The Appeals Council, in turn, remanded the matter to the ALJ for a new hearing and a new decision as to the period from the first application date of June 21, 2017 through February 9, 2020 (one day prior to the effective date of her subsequent, successful application). On January 4, 2022, the ALJ held a new hearing. AR 332–348. On February 2, 2022, the ALJ issued an unfavorable decision. AR 311–331. On April 11, 2022 Plaintiff filed a second complaint in this Court. Doc. 1.

### III.  The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . .

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity from the June 21, 2017 application date through February 9, 2020. AR 316. At step two the ALJ found that Plaintiff had the following severe impairment: post-traumatic stress disorder. AR 316. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: left foot injury, migraine headaches, and asthma. AR 317–319. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 319–321.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and

concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: non-complex and routine tasks with occasional public contact.  AR 321–324.

At step four the ALJ concluded that Plaintiff had no past relevant work.  AR 324.  At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: cleaner II, kitchen helper and hand packager.  AR 325–326.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time between her application date of June 21, 2017 through February 9, 2020.  AR 326.

## V.    Issues Presented

Plaintiff asserts that the mental RFC is not supported by substantial evidence because the ALJ failed to develop the record, formulated the RFC out of whole cloth and failed to properly account for Plaintiff's moderate limitation in concentration, persistence and pace.

### A.    Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R.

§ 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### B. Analysis

#### 1. Failure to Develop the Record; RFC Crafted from Whole Cloth

The ALJ's duty to further develop the record is triggered where the evidence is ambiguous or inadequate to allow for proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Tonapetyan*, 242 F.3d at 1150. A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

Plaintiff argues the ALJ had no guidance from any medical professional to effectively glean from the record the most Plaintiff could do in terms of mental capabilities, and should have contacted her treating providers for assistance in interpreting the evidence or ordered a consultative exam. Plaintiff contends the duty to develop the record was especially important in this case due to a variety of factual evidence.

First, Plaintiff emphasizes that her psychiatric treating provider, Dr. Narron, noted difficulty in providing mental health treatment because of Plaintiff's neurological concerns that had not been addressed. Br. at 11 (citing AR 271, 586, 588). Dr. Narron's treatment notes indicate as follows:

> the likely neurological issues that she is dealing with leave me with the impression that there is little I can do with mental health techniques given the damage that she has. Our conversation turned to rehab and the need for further work to dx organicity. It sounds like she got a lot of work at one point, but has no records and can't

> remember their names.  Possibility that her later drug use not only cause further damage, but may keep practitioners from working with her (think the damage is from drugs.  Client to get MRI once she gets them the right card.

AR 271.  Despite diagnosing PTSD, other visit notes of Dr. Narron indicate that her presentation was not making sense to him, that her memory difficulties were attributable to something other than a psychiatric disorder, that he was not clear what he could offer her from a mental health perspective, and that he was referring her to neurology.  AR 586, 587.

These visit notes do not support the argument regarding the ALJ's failure to further develop the record concerning Plaintiff's mental functionality.  If the contention is that the ALJ did not properly estimate the functional impact of Plaintiff's PTSD (the only mental impairment the ALJ found), Dr. Narron's notes are not illustrative as he clearly expressed that Plaintiff was suffering neurological issues attributable to something other than PTSD and referred her elsewhere for further diagnostics.  For the same reason it would not have been fruitful for the ALJ to have contacted him for further clarification as he apparently had none to provide.

Plaintiff further contends "Dr. Narron noted Plaintiff 'is unable to do any function work as a result of her disabilities and mental health.' T 263. While not considered a medical opinion, this statement shines light on the fact that Plaintiff is extremely limited in her work-related abilities. however, the ALJ declined to delve into the matter further." Br. at 11 (citations and quotations in original).  The quoted material appears in the "History of Present Illness" section of the visit notes which noted as follows:

> client told landlord that she cant leave currently. his response was nothing . basic situation is that client cannot perform her duties to watch landlords mother, she needs to leave. client discussed her previous jobs that were all attached to relationships. Worked out the dynamics that *client is unable to do any functional work as a result of her disabilities and mental health*. her work ends up consisting of having relationships with the people she works for until the situation devolves for any reason. client and I looked at real world solutions to her situation and worked on reality based decisions vs. fantasy

AR 263 (emphasis added).  Although Plaintiff acknowledges that the italicized statement is not

tantamount to a medical opinion, Plaintiff nevertheless concludes the statement is reflective of extreme limitations in work related functionality.  However, when read alongside Dr. Narron's additional notes under history of present illness, it is reasonably clear the italicized portion reflects Dr. Narron's attempt to paraphrase what Plaintiff reported to him about the nature of her work.  Further, it is not clear what duties were involved in watching her landlord's mother, or what "functional work" it encompassed.

Plaintiff further emphasizes MRI results which, according to Plaintiff, "revealed scattered periventricular small vessel ischemic changes which were causing dizziness, difficulty expressing herself, impaired coordination, confusion, impaired memory, and migraines." Br. at 11 (citing AR 304, 305).  Although Plaintiff accurately recites the MRI results, the cited records reflect no objective indication that the changes depicted in the MRI were causing her symptoms.  Rather, Dr. Lee (her neurologist) appeared to be reporting her symptoms, including a recent migraine episode.  AR 304.  Further, as the ALJ noted, Dr. Lee's plan of care included physical therapy ("Epley's maneuver[3] x 6 visits") which Plaintiff did not complete, that Plaintiff requested a new neurologist because "Dr. Lee is a quack," that she was provided with a new neurology referral but the record does not reflect that she ever followed through on the referral.  AR 318.

Plaintiff's general contention that the ALJ formulated the RFC out of whole cloth based on her own lay interpretation of the records is at odds with Ninth Circuit case law.  Although ALJs do not have unbridled discretion to do so, an ALJ is almost always tasked with performing some independent review of medical evidence that was never considered by one of the agency's reviewing physicians and translating the same into an RFC.  This is consistent with the ALJ's role as characterized by the Ninth Circuit.  *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th

---

[3] "The Epley maneuver is a series of head movements to relieve symptoms of benign positional vertigo."
https://medlineplus.gov/ency/article/007662.htm#:~:text=The%20Epley%20maneuver%20is%20a,everything%20is%20spinning%20around%20you.

Cir. 2015),  ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). The agency may (not must) order a consultative examination to resolve ambiguity or insufficiency. 20 C.F.R. § 404.1519.

Granted, the MRI results noting small vessel ischemic changes are certainly not self-explanatory and, though Plaintiff does not articulate this argument in so many words, some non-controlling case law frowns upon an ALJ independently reviewing complex imaging or laboratory findings and forming associated conclusions about their functional impact. *See, e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images).

In any event, there is no suggestion here that the ALJ formulated a layperson conclusion about the functional impact of the abnormalities noted in the MRI report. Rather, the ALJ focused instead on affirmative evidence of Plaintiff's mental functionality, evidence which refutes Plaintiff's suggestion that the existence of the MRI report created ambiguity in the record as a whole requiring further development.

In performing the psychiatric review technique (PRT) for evaluation of mental impairments as set forth at 20 C.F.R. § 404.1520a, the ALJ considered four broad categories of mental functioning and found no more than moderate limitations in each. In so concluding, the ALJ cited evidence regarding Plaintiff's mental functionality, including: 1) June 2015 consultative psychiatric examination (granted it was prior to the relevant period) which the ALJ characterized as largely unremarkable with full orientation and the ability to spell WORLD backward (Ex. 10F, AR 567–69); 2) August 2020 consultative examination (granted it was internal medicine, not psychiatric) to which Plaintiff drove herself and during which she exhibited 3/3 immediate recall and 2/3 remote recall and normal speech (Ex. 15F, AR 659); 3) evidence that she was able to use public

transportation and visit non-essential public establishments such as a casino (Ex. 11F/19, AR 590); 4) visit notes demonstrating good judgment and reason on November 10, 2017; January 16, April 17, and December 28, 2018; and, February 20 and August 29, 2019 (Exhibits 8F/7, 10, 12F/2, 15, 18, 22, 25.).

Plaintiff's argument that the record was ambiguous and/or inadequate for adjudication is non-responsive to the ALJ's affirmative findings set forth above regarding the evidence of her mental functionality. The suggestion that the ALJ should have ordered a consultative examination to resolve the ambiguity created by the MRI, or contacted Plaintiff's treating providers for clarification, is undermined by the fact that Plaintiff underwent two consultative examinations (a psychiatric exam prior to the relevant period, and an internal medicine exam after the relevant period), and the fact that her neurologist Dr. Lee had recommended a Montréal cognitive assessment test following her MRI which Plaintiff failed to appear for on November 16, 2017. (Exhibit 9F/2, AR 304).

It is admittedly concerning that none of Plaintiff's treating providers, Dr. Narron in particular, appear to have ever performed a comprehensive mental status examination at any of her office visits. And, as Plaintiff emphasizes, the ALJ has a special duty to fully and fairly develop the record and to assure Plaintiff's interests are considered, even when represented by counsel. *Zamora v. Berryhill*, No. EDCV 17- 0502-KS, 2018 WL 1756140, at *7 (C.D. Cal. Apr. 9, 2018) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).

However, as quoted by Defendant, the language of SSR 17-4p is particularly instructive here: "Although we take a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability or blindness claims." Importantly, neither Dr. Narron's psychiatric treatment notes, the MRI results, or Dr. Lee's interpretation of the same triggered the

ALJ's duty to develop the record by seeking clarification from Drs. Narron or Lee about Plaintiff's mental functionality.  Plaintiff and her counsel had the primary responsibility to obtain and submit such evidence.  *See* SSR 17-4p.

Plaintiff emphasizes that she was found disabled on a subsequent application as of February 10, 2020, and contends "it seems highly unlikely that Plaintiff would be only slightly limited in her abilities on February 9, 2020, and then completely disabled as of February 10, 2020." Br. at 11. But the suggestion that the agency's two findings are in tension is not compelling as the date of February 10, 2020 is simply the day Plaintiff filed her subsequent claim for supplemental security income.  Thus, it was effective on that date.

Further, Plaintiff cites no authority to support her suggestion that the ALJ had any obligation to square or explain the two findings.  These are two distinct applications, and only the former is the subject of this appeal.  To the extent the successful application was supported by evidence which could inform Plaintiff's disability status during the relevant period under review here (June 27, 2017 through February 9, 2020), Plaintiff had the opportunity to cite such evidence and explain its relevance to the current claim.  But she did not.

Finally, Plaintiff emphasizes the Court's prior order dated October 6, 2020 remanding for further proceedings and contends that, "Even though the same ALJ heard the case again with the guidance from the Magistrate Judge, the ALJ again fails to support the mental RFC with substantial evidence by failing to develop the case to gain clarity into Plaintiff's work-related mental abilities." Br. at 13-14. Yet the ALJ's alleged failure to fully develop the record was not previously at issue. The Court found insufficient evidence to sustain the ALJ's finding that Plaintiff had only mild limitations in any of the four areas of functioning considered in the PRT, and that her mental impairments were therefore non-severe.  AR 390-400.

Here the ALJ found moderate limitations in several areas, found Plaintiff's PTSD was

severe, proceeded to step four as instructed,[4] and incorporated the PRT findings of moderate limitations in the RFC in the form of concrete restrictions, namely non-complex and routine tasks with occasional public contact. As discussed below, Plaintiff disputes whether the RFC sufficiently accounts for those moderate mental limitations. However, Plaintiff does not sufficiently call into question the ALJ's compliance with the Court's October 6, 2020 order.[5] *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

### C. The RFC's Incorporation of Moderate Limitations in Concentration, Persistence, And Pace

#### 1. Applicable Law

At step three, in performing the psychiatric review technique (PRT), the ALJ found that Plaintiff had a moderate limitation in concentration, persistence, and pace, and moderate limitation in interacting with others. AR 320. Per the regulations, "when we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale:

---

[4] Strictly speaking, the ALJ was instructed to find Plaintiff's PTSD *and* depression severe (not just her PTSD), and then to proceed through the sequential process. AR 399-400. But again, the Court has no obligation to advance arguments on Plaintiff's behalf, and there is no reason to believe that separately listing PTSD and depression as distinct impairments would have impacted the RFC absent evidence of distinct functional limitations uniquely attributable to her depression as opposed to PTSD, which Plaintiff does not attempt to identify.

[5] If Plaintiff's intention was to do so, it should have been done overtly, much earlier, and should have been accompanied by a notice of related case under Local Rule 123(D) explaining the relationship between the cases, the overlapping questions of fact and/or law (if any), and explaining why reassignment to one judge would serve judicial economy and related interests. *See* L.R. 123(D) ("Duties of Counsel"). The closest contention Plaintiff makes is that the ALJ "again fails to support the mental RFC with substantial evidence," which is a rather generalized contention. Lack of substantial evidence is the allegation inherent in every social security complaint. Given the narrow questions of law and fact decided by the Court previously, and the distinct questions at issue here, there is no reason to believe it would involve a substantial duplication of efforts for the actions to be heard by different Magistrate Judges. At issue previously was the propriety of the ALJ's threshold adverse finding of no severe mental impairment. At issue currently is whether, having now found a severe mental impairment, the ALJ should have further developed the record and obtained a functional opinion from a medical source prior to rendering an RFC determination herself, and whether that RFC determination she did ultimately render adequately incorporated Plaintiff's moderate limitation in social interaction, and in maintaining concentration, persistence, and pace.

None, mild, moderate, marked, and extreme." 20 C.F.R § 416.920a(c)(4). The existence of two marked limitations or one extreme limitation satisfies listing 12.15 and is per se disabling, whereas an impairment causing no more than mild limitations in any area is generally considered a non-severe impairment. 20 C.F.R. § 416.920a(d)(1).

Moderate limitations lie in the middle of that spectrum and occupy a somewhat unique space in social security jurisprudence, with no controlling authority directly on point. "SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'" *Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of Case 1:21-cv-00134-GSA Document 17 Filed 01/21/22 Page 14 of 16 Ability to do Work-related Activities (Mental))

Other courts have noted that "[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks"). *McLain v. Astrue*, 2011 WL 2174895, *6 (C.D. Cal. 2011). Even though moderate limitations are not per se disabling, courts have often found they must be incorporated in the RFC. *See, e.g. Wascovich v. Saul*, 2:18-CV-659-EFB, 2019 WL 4572084, at *4 (E.D. Cal. Sept. 20, 2019) ("Where the ALJ accepts the medical assessment of moderate limitations, those limitations must be accounted for in the RFC."); (citing *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013).

"This does not necessarily mean that the ALJ was required to explicitly transcribe the limitation in the RFC. Rather, he is required to account for it in his 'translation.'" *Wascovich*, 2019 WL 4572084 at *5; *Rounds v. Commissioner of Social Security Administration*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

**2.      Analysis**

The RFC here restricted Plaintiff to non-complex and routine tasks with occasional public contact. The parties dispute whether this was an adequate translation of the PRT findings regarding moderate limitations in social interaction and maintaining concentration, persistence and pace.

Plaintiff briefly suggests the social interaction limitation was not adequately accounted for in the RFC (Br. at 13), but Plaintiff does not elaborate on this contention or why she believes the restriction to occasional public contact was insufficient. Granted, the ALJ did not specifically explain why no additional restriction was assessed for interaction with coworkers and supervisors as distinct from the public. But the ALJ did note that despite Plaintiff's reported difficulty "interacting with *strangers*," and evidence of her difficulty expressing herself, she nonetheless maintained relationships with people who provided her shelter and transportation; she was repeatedly noted as calm, pleasant, and cooperative at appointments during the relevant period;[6] she has been a caregiver for others; she took public transportation; and she was able to visit non-essential public establishments such as a casino. AR 320 (emphasis added).

Though somewhat limited in its persuasiveness, the ALJ's discussion can be reasonably parsed without inferential leaps. Given Plaintiff's reported difficulty interacting with strangers, the ALJ justifiably restricted Plaintiff to occasional public contact with no comparable restriction in interacting with peers and supervisors as the record reasonably demonstrated Plaintiff could cultivate personal relationships. The discussion satisfied the ALJ's obligation to "build an accurate and logical bridge from the evidence to [her] conclusion" that Plaintiff could have occasional public contact and unrestricted contact with peers and supervisors. *Tate v. Astrue*, No. 1:11-cv-01643-SKO, 2013 WL 211259, *5 (E.D. Cal. Jan. 18, 2013) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595

---

[6] Though these oft-cited clinical "findings" add little to the persuasiveness of the ALJ's analysis. Observations concerning a claimant's general temperament in the context of a brief medical office visit (particularly a visit for non-mental health concerns) have little applicability when considering a claimant's ability to interact with others in the workplace.

(7th Cir. 2002)).

As to the moderate limitation in concentration, persistence and pace, the analysis is less clear. Courts have occasionally relied on the Ninth Circuit's opinion in *Stubbs-Danielson* for the proposition that a limitation to simple and routine tasks can serve as a catchall for moderate mental limitations insofar as *Stubbs* held that an ALJ appropriate translated "pace and the other mental limitations regarding attention, concentration, and adaption" into "the only concrete restrictions available to him," namely a limitation to simple tasks. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Defendant similarly suggests as much here.

The case law in this circuit is split but tends to favor the view that a restriction to simple/routine tasks is not a catchall and does not account for all moderate limitations in mental functioning. *See Macias v. Saul*, No. 1:19-CV-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases, and holding that a limitation to simple/routine tasks does not account for moderate limitations in maintain attendance and completing an 8-hour workday); (*Wascovich*, 2019 WL 4572084 at *5 (E.D. Cal. Sept. 20, 2019) (simple and routine task limitation does not account for moderate limitations in maintaining attendance); *Donna M. v. Saul*, No. 19-CV-03134-DMR, 2020 WL 6415601, at *4 (N.D. Cal. Nov. 2, 2020) (noting limitation to simple, routine tasks with no public interaction in RFC failed to address other moderate limitations, such as plaintiff's ability to relate to and interact with coworkers, associate with day-to-day work activity, maintain regular attendance in the workplace, and perform work activities on a consistent basis without special or additional supervision); *Sahyoun v. Saul*, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *4 (E.D. Cal. Mar. 27, 2020) (rejecting argument that RFC determination that plaintiff could sustain work involving simple, repetitive tasks adequately captured moderate limitations in maintaining regular attendance, completing a normal workday or work week without interruption from a psychiatric condition, and handling normal work-related stress); *Christopher G. v. Saul*, No.

14

2:19-CV-06150-AFM, 2020 WL 2079972, at *6 (C.D. Cal. Apr. 30, 2020); *Flores v. Saul*, No. 1:18-CV-01523-SKO, 2020 WL 509098, at *5 (E.D. Cal. Jan. 31, 2020); *but see Messerli v. Berryhill*, No. 1:16–cv–00800–SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017) (finding limitation to "simple repetitive tasks" accounted for moderate limitations in ability to accept instructions, interact with coworkers and the public, maintain attendance, complete a normal workday/workweek without interruptions, and moderate to serious limitations in her ability to deal with work stress); *Calisti v. Colvin*, 2015 WL 7428724, at * 7 (E.D. Cal. Nov. 23, 2015); *Schmidt v. Colvin*, No. 2:12-cv-00016-KJN, 2013 WL 5372845, at *17 (E.D. Cal. Sept. 25, 2013).

As should be apparent, the post-*Stubbs Danielson* caselaw provides no clear answer as to whether a restriction to simple and routine tasks (or in this case "non-complex" and routine tasks) accounts for moderate limitations in concentration, persistence, and pace. And, if not, there is similarly no clear guidance on how such a limitation ought to be incorporated in the RFC in concrete terms. The nearest discussion Plaintiff provides is an emphasis on the VE's testimony that 15% off task behavior would preclude all available work employment. But it does not follow that moderate limitations in concentration, persistence, and pace necessarily translate to 15% off task behavior. Thus the Court cannot conclude here that the ALJ committed error with respect to Plaintiff's moderate mental limitations.

### VI. Conclusion

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Victoria Lynn Barney.

IT IS SO ORDERED.

Dated:     **May 22, 2023**                              **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE